IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

WILLI FREE I GARNER,              §
      TDCJ-CID #606635,           §
v.                                §          CASE NO. 2:11-cv-320
                                  §
ERNEST GUTERREZ, JR., ET AL.      §

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CERTAIN CLAIMS AND TO  RETAIN CASE

This is a civil rights action filed by a Texas state prisoner pursuant to 42 U.S.C.

§ 1983.

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321

(1996), any prisoner action brought under federal law must be dismissed if the complaint is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks

monetary relief from a defendant immune from such relief.  See 42 U.S.C. § 1997e(c); 28

U.S.C. §§ 1915(e)(2), 1915A.  Plaintiff's action is subject to screening regardless whether

he prepays the entire filing fee or proceeds as a pauper.  Ruiz v. United States, 160 F.3d 273,

274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per

curiam).  Plaintiff's pro se complaint must be read indulgently, Haines v. Kerner, 404 U.S.

519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are

clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that the Court retain

plaintiff's excessive force claims against the defendants identified herein.  It is respectfully

recommended further that plaintiff's remaining claims against the remaining defendants be

dismissed for failure to state a claim and/or frivolous pursuant to 28 U.S.C. §1915(e)(2)(B) and §1915A(b)(1).

## I.    Jurisdiction.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.    Factual background and plaintiff's allegations.

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently incarcerated at the McConnell Unit in Beeville, Texas.  Over the years, plaintiff has filed several civil actions challenging events or conditions at the McConnell Unit.  In Garner v. Prasifka, Case No. 2:03-cv-181, plaintiff challenged as unconstitutional a disciplinary hearing that resulted in his loss of good time credits, and also claimed that officers used excessive force against him when they jerked and twisted his wrists when placing him in handcuffs, and that supervisors were deliberately indifferent to his serious medical needs thereafter.  That action was dismissed for failure to state a claim and/or as frivolous, and was counted as a strike for purposes of 28 U.S.C. § 1915(g).

In Garner v. Morales, Case No. 2:06-cv-218, plaintiff challenged the TDCJ-CID's grooming regulations under both the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") concerning his right to wear a beard and/or a kufi. Although his kufi and First Amendment claims were denied, plaintiff ultimately succeeded on his RLUIPA claim such that he is now entitled to wear a one-quarter inch beard as an

2

expression of his Muslim faith.  See Garner v. Livingston, 2011 WL 2038581 (S.D. Tex. May 19, 2011) (unpublished).

More recently, in Garner v. Moore, Case no. 2:11-cv-169, plaintiff complained that, since his success in his RLUIPA case, prison officials were retaliating against him in various ways, including denying him access to the law library and giving him false disciplinary cases.  In March 2012, summary judgment was granted in favor of the defendant prison officials; plaintiff has appealed that decision.

Plaintiff filed the instant action on September 30, 2011 raising a variety of claims, including excessive force, against numerous McConnell Unit officials and employees.  (D.E. 1).  On October 24, 2011, plaintiff submitted exhibits in support of his claims.  (D.E. 7).  On February 21, 2012, plaintiff filed a supplement to his complaint, (D.E. 13, 15), and on March 21, 2012, plaintiff filed a second supplement.  (D.E. 16, 17).

On March 22, 2012, a Spears[1] hearing was conducted, and at the hearing, plaintiff was advised that he could file additional supplements to his complaint within the next forty-five days.  Plaintiff filed four additional pleadings, and numerous exhibits.  (See D.E. 18, 19, 20, 22).

The following allegations were made in plaintiff's original complaint, his supplements to his complaints, or at the hearing:[2]

_____

[1]Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

[2]In his original complaint, D.E. 1, plaintiff identified five (5) separate "claims"; the exhibits filed at D.E. 7 relate to those claims.  In supplements filed at D.E. 13 and D.E. 16, plaintiff does not

**Claim No. 1.**  (D.E. 1 at 4-8).

On August 6, 2009, at approximately 8:30 a.m., plaintiff was escorted along with four or five other inmates to 3-gym to have his picture taken for his ID card.  The gym was crowded with inmates sitting along the walls on the floor.  Officer Rebecca Stamm and Officer James Hackman were present and taking roll call for count.

As plaintiff entered the gym, the classification supervisor, Amie Gaitan approached him and reprimanded him for his appearance.  Ms. Gaitan told him that he would not get his ID picture taken unless he was clean-shaven, despite the fact that he had challenged the grooming policy in federal court, and the case was then pending.  Ms. Gaitan ordered plaintiff to sit down and wait.

After count cleared, plaintiff began to exit the gym with other inmates.  Officer Stamm and Officer Hackman stopped plaintiff stating that he could not leave because he was still "on the list.'  Plaintiff responded that Ms. Gaitan had advised him that he could not have his photo taken unshaven.  The officers told him not to worry, and indicated that he would get his picture taken.

Plaintiff continued to wait, and at some point, he observed Officers Hackman and Stamm, together with Ms. Gaitan, talking on the phone and pointing at him.  Thereafter, Officer Hackman told plaintiff that Captain Jameson was coming to talk to him, and until then, he should just "chill."

---

identify his claims by a specific number.  In his fourth supplement, D.E. 20, plaintiff identifies six (6) distinct claims.

After approximately 3 hours, Warden Ambriz, Captain Jameson, Sergeant Billy Garza, Officer Rincon, and Officer Hough arrived at the gym, along with Nurse Bullock and Nurse Burns.  Warden Ambriz advised plaintiff that the McConnell Unit had recently enacted a policy by which any amount of force could be employed to take the photo of a prisoner who would not comply with the grooming policy.  Then, Officer Rincon handcuffed plaintiff, and Officer Stamm started a video-camera.

Once the video started, Captain Jameson addressed the camera and gave the formalities about employing a use of force.  Warden Ambriz and Captain Jameson ordered Officer Rincon and Officer Hough to place plaintiff in the barber chair.  Officer Rincon and Officer Hough grabbed plaintiff and pushed him down into the chair, and remained there holding his arms down, while Officer Garza began shaving plaintiff, while instructing him to sit still.  (Officer Garza is not a barber nor is he licensed to cut hair).  The other officers mimicked plaintiff and laughed at him. After the shave, plaintiff's photo was taken.

Following the shave, plaintiff was taken to medical for a cursory exam.  He was then escorted to 11 Building and once there, he refused to walk up the stairs, advising Captain Jameson that he has first row, bottom bunk medical restrictions.  Captain Jameson threatened plaintiff with force if he did not walk up the stairs; however, plaintiff refused.  Eventually, Captain Jameson placed plaintiff in the holding cage for lower row housing.

While plaintiff was locked in the holding cage, he was ordered to submit to a strip search.  He was also given a disciplinary case for failure to groom.  In addition, Warden

Jackson and Major Barber stopped by the holding cage and "smirked" at the shaving results, and asked plaintiff if he was ready to return to population.

On August 9, 2009, plaintiff filed a grievance about the incident. Warden Jackson denied the grievance stating that plaintiff had not been forcibly shaved. Plaintiff filed a Step 2 appeal, and it was denied without investigation. (See D.E. 7 at 3-6).

On August 10, 2011, plaintiff was released from lock-up and taken to 7 Building transient.

On August 12, 2009, plaintiff had a disciplinary hearing on the minor offense of failure to groom. Plaintiff was found guilty, and as punishment, he received 30 days commissary and recreation restriction. (D.E. 7 at 2).

**Claim No. 2.** (D.E. 1 at 8 -13).

On August 14, 2009, plaintiff was told to pack his property as he was being moved to 4-Building. As Officer Nikki Tavarez escorted plaintiff to 4-Building, they walked past Sergeant Tonya Killingsworth who expressed her displeasure that plaintiff was being transferred to "A-side." When plaintiff arrived at 4-Building, he heard Lieutenant Bernadette Rodriguez on the phone stating that she would make sure a case was written on "him" today. Although it was time for plaintiff to eat, Officer Tavarez and Lieutenant Rodriguez informed him that he could not eat until he shaved. Plaintiff turned and walked out of the building, but Officer Taverez, Lieutenant Rodriguez and Officer Corry Lynch stopped him, pushed him up against a fence, and told him that he had to shave. Plaintiff requested a video-camera and

rank.  Lieutenant Rodriguez left briefly, then returned stating that Captain Jameson wanted to talk to plaintiff.

Plaintiff was taken to Captain Jameson who commented that plaintiff was already causing trouble on 4-Building.  Plaintiff replied that all he wanted to do was to eat, but Captain Jameson insisted that he shave first, or a use of force would be called.  Plaintiff replied to take him back to 11-Building.  Captain Jameson then rushed at plaintiff and ordered him to put his hands behind him to be cuffed by Officer Rincon.  Plaintiff complied, but commented that this action amounted to a use of force.  Plaintiff was escorted to medical and then to 11-Building by Officer Lynch and a lieutenant.  He was given a disciplinary case for threatening to inflict harm on Captain Jameson, and as punishment, he received 30 days loss of commissary and recreation privileges, and a reduction in his line class.  (D.E. 7 at 19).  Plaintiff claims that his counsel Substitute, C.S. Bryant, was incompetent because she did not cross-examine Captain Jameson.  Plaintiff grieved both the incident and the disciplinary case, but his challenges were not successful.  (See D.E. 7 at 20-27).

**Claim No. 3.**  (D.E. 1 at 13 - 16).

On August 14, 2009, while plaintiff was in lockup, his bags of property were left unattended in D-pod, 27 cell.  Sergeant Killingsworth and Lieutenant Rodriguez were responsible for his property at the time.  On August 17, 2009, Officer Menchacha brought plaintiff two bags of property, but told him he must sign for them, although he could not inspect them first.  Plaintiff later determined that certain items were missing, and on August 18, 2009, he filed a grievance complaining about the loss of his property.  (See D.E. 7 at 7-

7

11).  Warden Jackson denied plaintiff's grievance stating that he had signed for his property.  Id. at 9.  Plaintiff's Step 2 appeal was also denied.  Id. at 11.  Plaintiff did not file an action in state court for return of the property or for damages.

**Claim 4.**  (D.E. 1 at 16 - 19).

On October 6, 2009, Sergeant Trevino and Sergeant Rios denied plaintiff breakfast because he was not clean-shaven.

On October 7, 2009, Sergeant Trevino and Sergeant Atkinson denied plaintiff breakfast.

On October 8, 2009, plaintiff advised Ms. Phipps that he was being denied meals.  She advised him that he must be clean shaven.

On October 10, 2009, plaintiff was given a major case for failing to groom.  Plaintiff was found guilty and as punishment he lost five (5) days good time credit, and received 30 days commissary and recreation restriction.    His counsel substitute, C.S. Bryant, was ineffective.  His grievances complaining that the disciplinary cases were retaliatory were denied.

**Claim 5.**  (D.E. 1 at 19-24).

On November 22, 2009, Trevino and Phipps served plaintiff with failure to groom cases in retaliation for his filing grievances.  They then denied him breakfast by refusing to open his cell door, even though his cellie cried out to open the cell.

**Claim 6.**  (D.E. 13 at 18-19).[3]

On March 4, 2010, Sergeant Laura Beltran-Gomez and Officer Valderrama refused to escort plaintiff to chow hall unless he first shaved.  Sergeant Gomez then brought plaintiff a pork tray, even though she knew that he requires a pork-free diet.  Plaintiff contends that Sergeant Gomez was acting in retaliation for his filing grievances against her in the past. (D.E. 13 at 18-19).  Plaintiff filed a Step 1 grievance and it was denied.  Id. at 19.

**Claim 7.**  (D.E. 13 at 25-27).

On March 8, 2010, Officer R. Garza advised plaintiff that he was being moved to K-pod.  Plaintiff related that he had no problem moving, but that he could not go to K-pod because a Muslim brother had been assaulted there by the Crips.  Officer Garza called Sergeant Bedarski, who initially instructed Officer Garza to write plaintiff a disciplinary case for failure to move; however, after talking further with plaintiff, Sergeant Bedarski realized the seriousness of the matter, and he called Ms. Hackman to determine if other housing arrangements were possible.  Ultimately, it was decided that plaintiff would be moved to L-pod, and as plaintiff was leaving, Sergeant Bedarski told plaintiff not to worry about the disciplinary case because his situation "overruled" it.  However, in error plaintiff was given a disciplinary case by Officer Garza.  (D.E. 13 at 27). Plaintiff filed a grievance, and on April 14, 2010, Warden Crites advised plaintiff that the disciplinary case had been set aside and removed from his disciplinary history.  Id. at 25-26.

---

[3] Plaintiff's D.E. 13 includes grievances concerning events at the Goree Unit.  Plaintiff was advised that this Court would not consider claims against prison officials at the Goree Unit.

**Claim 8.**  (D.E. 16 at 26-30).

On March 13, 2010, plaintiff was given a disciplinary case by Officer McKibben for refusing to obey an order, of which he was found guilty and received as punishment 30 days loss of commissary and recreation.  (D.E. 16 at 26).  Plaintiff filed a grievance alleging that his due process rights were violated because Lieutenant Perales did not ask him if he wanted to attend the hearing, and Sergeant Trevino, who physically served plaintiff with a copy of the case, failed to give him proper notice or a copy of the disciplinary rules.  Id. at 29-30. Warden Jackson denied plaintiff's grievance.  Id. at 30.

**Claim 9.**  (D.E. 16 at 31-33).

On March 15, 2010, Officer Robles, Sergeant Trevino, Officer Garcia, and officer Mayfield harassed plaintiff for wearing a beard, and also gave him a disciplinary case.  (D.E. 16 at 31, 32-33).  He was found guilty at the disciplinary hearing, and received 20 days loss of commissary and recreation.  Id.  at 31.

**Claim 10.**   (D.E. 16 at 35-37).

On March 30, 2010, Officer Rachel Ramon observed plaintiff in his cell but purposely refused to leave a johnny sack meal for him, and she commented: "You just not going to stop filing these damn grievances until bad things happen to you."  (D.E. 16 at 35-36).  She also has told other officers to write plaintiff a disciplinary case "for that nappy beard."  Id. at 37.

**Claim 11.**  (D.E. 16 at 44).

On April 30, 2010, while plaintiff was in the chow hall, Lieutenant Perales pointed him out to the 8-Building barber.  Thereafter, Officer Munoz told plaintiff that something

needed to be done about his beard because it was too long and "scruffy."  In retaliation and to harass plaintiff, Officer Munoz gave him a disciplinary case for failure to shave.  (D.E. 16 at 44).

**Claim 12.**  (D.E. 16 at 45-46).

On May 2, 2010, Officer Alvarado came to escort plaintiff to medical, however plaintiff knew he did not have an appointment, and he believed that Officer Alvarado was trying to lure him outside of the scope of the cameras so that he might get assaulted by officers.  (D.E. 16 at 45).  Plaintiff refused to leave his cell.  Id. at 46.  He was given a disciplinary case.

**Claim 13.**  (D.E. 16 at 49-51).

On May 3, 2010, the picket officer opened the door to plaintiff's cell and he exited for chow, but  Officer Montoya and a John Doe officer told plaintiff that he was not allowed to go to chow because of his beard, but that a tray would be brought to his cell.  (D.E. 16 at 49-51).  Plaintiff claims that, because he was assigned to general population, he is allowed to eat in the chow hall, and the officers refusal to let him do so is was in retaliation for his filing grievances and lawsuits.

**Claim 14.**  (D.E. 20 at 3-6).

On June 10, 2010, plaintiff was attending Muslim services in 7-gym, when Sergeant Gonzales ordered all 8-Building inmates out of the gym for count and stated that they had not been authorized to attend the services and would be given disciplinary cases.  (D.E. 20 at 3).  Plaintiff complained to Captain Gonzales, and the disciplinary cases were terminated.

Id. at 5.  On June 23, 2010, Officer Sanchez gave plaintiff a minor disciplinary case for being out of place, and a hearing was held on July 10, 2010 by Captain Pulido.  Id. at 5-6.  Plaintiff admitted that he had been in the gym, and Captain Pulido found him guilty, and assessed punishment as 30 days loss of commissary and recreation.  Plaintiff complained to Warden Guterrez and the minor case and punishment were set aside.  Id. at 6.  Plaintiff claims these false disciplinary cases evidence a campaign of retaliation and harassment.

**Claim 15.**  (D.E. 20 at 6-9).

On July 2, 2010, Officer McCune gave plaintiff a disciplinary case for being out of place and refusing to follow an order after showering.  (D.E. 20 at 6-7).  Plaintiff complained to Captain Gonzales, But Captain Gonzales stated he believed his officers who indicated that plaintiff was in the shower at rack time.  Id. at 7.  Plaintiff complained to Warden Guterrez, but he failed to intervene in the situation.  Id.  At the disciplinary hearing held on July 6, 2010, plaintiff told his counsel substitute Bryant that he wanted to present documentary evidence of the surveillance video showing that he was in the shower and waiting in the dayroom, but C.S. Bryant did not get the video.  The disciplinary hearing was held without plaintiff present, and plaintiff's punishment was that his line class remained unchanged at Line 3.  (D.E. 20 at 9).  Plaintiff filed grievances about the disciplinary hearing and about his counsel substitute, as well as against the charging officers, but all were denied.

**Claim 16.**  (D.E. 20 at 11-15).

On September 30, 2010, plaintiff and other inmates were instructed to pack their property and take it to the recceation yard for a shake down.  (D.E. 20 at 11-15).  Officer

McGovern used racial slurs against plaintiff, and so plaintiff asked Officer Perales to control Officer McGovern.  In response, Officer Perales, Officer Ruiz and Officer Caldwell encircled plaintiff and threatened him with physical harm.  These officers then pushed plaintiff causing harm to his neck, and also kicked and damaged his property.  Officer West observed these officers harassing plaintiff but he did not intervene to help plaintiff, and instead, kept the doors positioned so that plaintiff was trapped.

**Claim 17.**  (D.E. 20 at 16-19).

On December 7, 2010, defendants Gonzales and Pulido began harassing plaintiff about not shaving as he was attempting to enter the chow hall.  (D.E. 20 at 16-19).  A use of force ensued involving Officer Clark, Officer Daugherty, Gonzales and Pulido.  Thereafter, plaintiff was denied medical attention, as well as food for three days.

**Claim 18.**  (D.E. 20 at 19-22).

On December 27, 2010**,** Officer Almanza stopped plaintiff on his way to chow and stated that he needed to be clean shaven.  (D.E. 20 at 19-22).  Additional officers were called and they encircled plaintiff with mace and batons.  Plaintiff sat down with his back to the wall and admits that he was refusing to submit to their orders to be cuffed, and he requested a supervisor with a camera.  Officer Almanza told plaintiff that Lieutenant Perales had said to use force if necessary to shave him, but that they would compromise if plaintiff would just agree to shave.  Plaintiff argued that he was in compliance with policy and waited for a supervisor.  Finally, Perales and Ruiz arrived and ordered plaintiff to submit to restraints.  Thereafter, defendants Gomez, Salinas,and DelaRosa jerked plaintiff up to standing and then

13

twisted his arms while Ruiz placed the cuffs on.  The officers told plaintiff that, if he shaved, he would be escorted to medical, and they placed him in his cell.

**Claim 19.**  (D.E. 20 at 22-25).

On December 28, 2010, Officer John Doe 3 and Officer John Doe 4 were working and plaintiff's cell door was pinned so that he could not get out of his cell to go eat.  Ruiz and Almanza were informed of the situation and stated they would look into it.  Plaintiff maintains that, whether or not he grooms, his cell should not be pinned unless he is on special cell restriction.  Plaintiff admits he yelled at Officer Doe 3, who claimed that he had been trying to help plaintiff.  Warden Guterrez then arrived and asked plaintiff to take a walk with him, and he asked plaintiff whether he had a medical pass to wear a cervical collar.  Plaintiff presented his pass and Warden Guterrez noted that it had expired, and ordered plaintiff to remove the brace, which the warden tossed in the trash can.  Plaintiff claims this was an unlawful seizure of his property.

During this time period, beginning in August 2009 through December 2010, plaintiff submitted weekly "epistles" to Warden Guterrez advising him of the conduct of the numerous defendant officers identified above, and plaintiff's assessment that these individuals were engaging in a campaign of retaliation and harassment to punish him for attempting to wear a beard and for filing grievances.[4]

---

[4] Copies of these epistles are found throughout plaintiff's pleadings.

## III.    Legal Standard.

It is well established that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam).  An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.  Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted).  The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed.  Id. (citation omitted).

## IV.    Discussion.

Plaintiff has raised the following claims: (1) excessive force; (2) retaliation; (3) loss of property; (4) failure to investigate grievances; (5) false grievances; (6) ineffective assistance of counsel substitute; (7) denial of meals; and (8) harassment.  Plaintiff is ***not*** challenging the TDCJ grooming policy in this case.

### A.    Excessive force.

Plaintiff claims that he was subjected to excessive force for refusing to shave on August 6, 2009 (Claim 1), September 30, 2010 (Claim 16), December 7, 2010, (Claim 17), and December 27, 2010 (Claim 18).

For an excessive force claim, plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and

sadistically to cause harm, and that the injury he suffered was more than *de minimis* but not necessarily significant.  See Hudson v. McMillian, 503 U.S. 1, 6-7, 10, (1992) (stating that a claimant must show officials applied force maliciously and sadistically for the very purpose of causing harm); Gomez v. Chandler, 163 F.3d 921, 923-24 (5th Cir. 1999); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997).  The factors to be considered are (1) the extent of the injury suffered; (2)  the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5)  any effort made to temper the severity of a forceful response.  Gomez, 163 F.3d at 923.

According to plaintiff, defendants claim they are authorized to use any amount of force necessary to gain complete compliance with the TDCJ grooming policy.

It is well established that prison officials may use physical force to restore or preserve order.  Whitley v. Albers, 475 U.S. 312, 320, 326 (1986).  However, the authorization to employ force is not unlimited, and the amount of force required to effect those purposes must be weighed against risk of injury to the inmate.  Id.; Hudson, 503 U.S. at 10. In circumstances where a prisoner's rule violation poses no threat to the safety of prison officers or others, the apparent need for force become more suspect and subject to scrutiny under Hudson.[5]

---

[5] The Fifth Circuit has held that physical violence against a detainee who poses no threat to the safety of the officers or others is a constitutional violation.  See Ware v. Reed, 709 F.2d 345 351 (5th Cir. 1983).

In this case, plaintiff claims that on at least one occasion, he was physically held down while "clipper shaved" by an officer who is not a licensed barber, and that on three other occasions, he was physically restrained and shackled as a consequence of his refusing to shave. On each of these occasions, there was no melee or event involving other prisoners or circumstances that necessitated force to restore order to the prison. Indeed, plaintiff was essentially singled-out and became the event to employ force. What is even more troubling about plaintiff's accusations is that an alternative to the force was clearly available: officials could have simply given plaintiff a disciplinary case, as they had done repeatedly on prior occasions, rather than risk harm to themselves or to plaintiff with a use of force.

For purposes of § 1915A, plaintiff has stated a claim of excessive force against the individuals who specifically ordered the use of force on August 6, 2009, Warden Ambriz and Captain Jameson. In addition, Officer Rincon and Officer Hough, who held plaintiff in the chair, and Officer Garza, who shaved plaintiff, should be required to answer plaintiff's allegations against them. Concerning the September 30, 2010 incident, it is respectfully recommended that the Court retain plaintiff's excessive force claims against Officer Perales, Officer Ruiz and Officer Caldwell.[6] Concerning the December 7, 2010 use of force, the officers involved were Clark, Daughtery, Gonzales and Pulido. Finally, as to the December 27, 2010 use of force, it is respectfully recommended that the Court retain

---

[6] Plaintiff claims that Officer West observed the incident but failed to intervene. Without more, plaintiff fails to state a failure to protect claim against Officer West because he does not suggest that Officer West knew or should have known that these others officers would use force against plaintiff. See Farmer, 511 U.S. at 835.

plaintiff's claims against Lieutenant Perales and officers Ruiz, Almanza, Gomez, Salinas, and DelaRosa.

### 2.    Retaliation.

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights.  See Perry v. Sinderman, 408 U.S. 593, 597 (1972).  Retaliation is actionable only if the retaliatory act "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." Bibbs v. Early, 541 F.3d 267, 270 (5th Cir. 2008).  "A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995).  However, the Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." Adeleke v. Fleckenstein, 385 Fed. Appx. 386, *1 (5th Cir. Jul. 12, 2010) (unpublished), citing Wood, 60 F.3d at 1166.

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights.  Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006).  However, some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights.  Id.  Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.  Id.  For example, a job transfer from

18

the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act.  Id. at 687.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing  McDonald v. Stewart, 132 F.3d 225, 231 (5th Cir. 1998).  An inmate must allege more than his personal belief that he is the victim of retaliation.  Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. Woods, 60 F.3d at 1166.

The Fifth Circuit has not specifically defined "the quantum of injury necessary to constitute an 'adverse act' for purposes of a retaliation claim. Hart v. Harrison, 34 F.3d 762, 764 (5th Cir. 2003).  However, the frequency and length of the retaliatory action are to be considered. Id.  For example, in Hart, the Fifth Circuit found that 27 days of cell restriction and loss of commissary privileges was not *de minimis*.  Id. at 765.  However,  in Morris, the Fifth Circuit concluded that a 10-day loss of commissary privileges as punishment for a disciplinary offense was no more than a *de minimis* adverse act.  Morris, 449 F.3d at 686. The Fifth Circuit has found that the denial of two meals over an eight-month period is *de minimis* and cannot support a claim of retaliation.  Romero v. Lann, 305 Fed. Appx. 242, *1 (Dec. 28 2008) (unpublished).  Similarly, a single incident in which a prisoner is not allowed to eat is *de minimis.*  Dickerson v. Johnson, 234 F.3d 29 (5th Cir. 2000).  Denial of recreation

on one occasion is a *de minimis* injury and does not constitute an "adverse retaliatory act," for purposes of stating a retaliation claim. <u>Cf</u>. <u>Ford v. Jones</u>, 2006 WL 3488954 (S.D. Tex. 2006) (unpublished), citing <u>Morris</u>, 449 F.3d at 686. However, in <u>Andrade v. Hauck</u>, 452 F.2d 1071, 1071-72 (5th Cir. 1971), the Fifth Circuit held that a prisoner who alleged his jailers restricted commissary privileges in retaliation for his exercising his First Amendment rights sufficiently stated a claim pursuant to § 1983.

In this case, plaintiff testified to repeated, almost daily, instances of retaliation from prison staff related to his RLUIPA lawsuit and refusal to shave. Thereafter, a viscous circle ensued with plaintiff filing grievances, which resulted in more alleged retaliatory conduct, which resulted in plaintiff filing more grievances, and so on.[7] To the extent defendants attempted to chill plaintiff's right to file grievances or to petition the Court, their actions had the opposite affect.

The problem with plaintiff's retaliation claims, however, is that although plaintiff claims he was singled-out, given false disciplinary cases, denied food, and otherwise treated wrongly, he ***admits*** to defendants' underlying justification for their actions: he refused to shave. That is, he cannot show that, but for the defendants' retaliatory motive, the complained of events would not have occurred. He was given failure to shave disciplinary cases ***because he did not shave***; he was not allowed into the chow hall ***because he did not shave;*** he was pinned in his cell ***because he did not shave.*** Given the fact that defendants'

---

[7] Plaintiff has set forth the retaliatory encounters in minute detail, with who said what and who replied to whom, and additional inappropriate commentary. Plaintiff's detail is tedious and substantially detracts from any underlying merit his claims might have possessed.

conduct cannot be attributable solely to a retaliatory motive, but indeed, to violations of the grooming policy to which plaintiff freely admits, his retaliation claims are unsustainable. Thus, it is respectfully recommended that those claims be dismissed.

### 3.    Loss of property.

Plaintiff claims that defendants lost or stole certain items of his personal property and have failed to return those items or to compensate him for their value.

The Fourteenth Amendment of the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV § 1.  The Supreme Court has held that a random and unauthorized intentional deprivation of property does not violate the Due Process Clause if the State provides an adequate post-deprivation remedy.  See Hudson v. Palmer, 468 U.S. 517, 534-35 (1984); Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996).  A claimant must either take advantage of the available remedies or show that the available remedies are inadequate.  Hudson, 468 U.S. at 534-35.

Texas law allows recovery of monetary damages for loss of property that has been taken without authorization.  See Murphy v. Collins, 26 F.3d 541, 543 (5th Cir. 1994) (in Texas, the tort of conversion fulfills this requirement); see also Beam v. Voss, 568 S.W.2d 413, 420-21 (Tex. Civ. App.– – San Antonio 1978, no writ) (conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with the owner's rights).  In addition, state law

specifically provides that inmates may recover up to $500.00 on a claim that the TDCJ lost or damaged personal property.  Tex. Gov't Code § 501.007 (Vernon 2005).

Because Texas law provides an adequate post-deprivation remedy, plaintiff's loss of property claim does not state a violation of the Due Process Clause.  See Hudson, 468 U.S. at 536 (noting that even when a prisoner's property was intentionally destroyed, such destruction did not violate the Fourteenth Amendment because state law provided the prisoner with an adequate post-deprivation remedy).  To the extent that plaintiff claims the loss of property was only the result of negligence, he has no claim for violation of a constitutionally protected right.  Daniels v. Williams, 474 U.S. 327, 328 (1986).

Plaintiff testified that he has not filed suit in state court pursuant to § 501.007 or for conversion.  In addition, plaintiff may bring suit in federal court only if relief is denied in state court on grounds other than the merits of his claim.  See Thompson v. Steele, 709 F.2d 381, 383 n.3 (5th Cir. 1983).  The burden is on the inmate to show that the post-deprivation remedy is inadequate.   Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996).

Plaintiff has not pursued his state court remedies and, until he does, he cannot attempt to allege that the post-deprivation remedy is inadequate.  As such, plaintiff's claim for property loss fails to state a constitutional issue, and it is recommended that it be dismissed for failure to state a claim.

## 4.    Investigation of grievances.

Plaintiff has named numerous supervisory officials as defendants claiming that they failed to investigate properly his grievance against other prison employees.

The Supreme Court has held that a prisoner "has a liberty interest only in freedom from restraint ... imposing atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). The Fifth Circuit has relied on Sandin to find that a prisoner has no federally protected liberty interest in having his prison grievances investigated or answered favorably. See Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). See also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state.").

Plaintiff's allegations that defendants failed to investigate his grievances properly fail to state cognizable § 1983 claims, and it is therefore respectfully recommended that those claims be dismissed.

**5. False disciplinary cases.**

Plaintiff contends that certain defendants filed false disciplinary cases against him. In two instances, plaintiff challenged those cases and they were expunged from his disciplinary record.[8] As to the other cases, save one, the punishments accessed against plaintiff were loss of commissary, recreation or line class. These punishments are not atypical or significant, and do not invoke constitutional protection. See Sandin v. Conner, 515 U.S. 472 (1995).

---

[8] Plaintiff is not entitled to damages in those cases because they did not involve the loss of good time credits.

As to one disciplinary conviction, plaintiff lost 5 days good time credits; however, habeas corpus, not § 1983, is the appropriate vehicle in which to challenge a disciplinary proceeding that results in the loss of good time. Kimbrell v. Cockrell, 311 F.3d 361, 362 (5th Cir. 2002) (stating that § 2254 is the "sole remedy for a prisoner's challenge to revocation of good-time credits"). Until plaintiff can demonstrate that the disciplinary case in which he lost good time has been set aside or reversed, he cannot maintain a § 1983 claim for damages arising from that loss. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Thus, it is respectfully recommended that plaintiff's damage claims for false disciplinary cases be dismissed.

### 6.    Ineffective assistance of counsel substitute.

Plaintiff contends that he received ineffective assistance of counsel from C.S. Bryant at many of his disciplinary proceedings. However, for purposes of § 1983, C.S. Bryant is not a state actor, nor is plaintiff entitled to representation at a prison disciplinary hearing. See Banuelos v. McFarland, 41 F.3d 232, 234 (5th Cir. 1995) (counsel substitute does not act under the color of state law for purposes of § 1983). Thus, it is respectfully recommended that the Court dismiss for failure to state a claim plaintiff's claims premised on the performance of his counsel substitute at his disciplinary hearings.

### 7.    Denial of meals.

Plaintiff alleges that, because he was denied access to the chow hall when he did not shave, he was also denied meals because officers either negligently or purposely failed to bring him a tray to his cell.

Prison officials have a constitutional obligation to provide reasonably adequate food to inmates.  Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999).  However, plaintiff testified that he rarely missed more than one meal in a row as officers at shift change would be sure to bring him a tray, and further, that he suffered no injury as a result of any missed meals.  He did not lose weight nor did he ever seek medical attention as a result of missed meals.  Without more, plaintiff's allegations concerning missed meals simply do not rise to the level of an Eighth Amendment violation because any deprivation was minimal.  Thus, it is respectfully recommended that his claims premised on the denial of food trays be dismissed.

**8.    Harassment, threats.**

Plaintiff claims that numerous prison officials and officers made verbal threats against him, laughed at him, and cursed at him.  However, even if certain defendants were rude or verbally abusive, such allegations fail to rise to the level of constitutional violations.  See Robertson v. Plano City of Texas, 70 F.3d 21, 24 (5th Cir. 1995) (verbal threats do not rise to the level of a constitutional violation).  Accordingly, it is respectfully recommended that plaintiff's claims premised on verbal harassment and threats be dismissed for failure to state a claim.

**V.    Recommendation.**

For the reasons stated above, it is respectfully recommended that the Court retain plaintiff's excessive force claims against the following defendants:

(1)    Warden Ambriz;
(2)    Captain Jameson;
(3)    Officer Rincon;

25

(4)     Officer Hough;
(5)     Officer Garza;
(6)     Officer Perales;
(7)     Officer Ruiz;
(8)     Officer Caldwell;
(9)     Officer Clark;
(10)    Officer Daughtery;
(11)    Officer Gonzales;
(12)    Officer Pulido;
(13)     Lieutenant Perales;
(14)    Officer Ruiz;
(15)    Officer Almanza;
(16)    Officer Gomez;
(17)    Officer Salinas, and
(18)    Officer DelaRosa.

It is respectfully recommended further that plaintiff's remaining claims against the remaining defendants be dismissed for failure to state a claim and/or as frivolous pursuant to pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

Respectfully submitted this 21st day of June, 2012.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.   Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).