IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| WILLI FREE I GARNER  TDCJ-CID NO. 606635, | § § § | |
| VS. | § § | Case No. 2:11cv320 |
| ERNEST GUTERREZ, JR., ET AL. | § § | |

**MEMORANDUM AND RECOMMENDATION**
**ON DEFENDANTS' PARTIAL MOTION TO DISMISS**

In this prisoner civil rights action, plaintiff Willi Free I Garner ("plaintiff") alleges that defendants violated his constitutional right to be free from excessive force when they forcibly held him down and shaved his beard on several occasions. Defendants have filed a motion to dismiss certain of plaintiff's claims as barred by limitations, and to dismiss certain defendants on the grounds that those individuals cannot be located. (D.E. 33). Defendants also argue that plaintiff cannot establish the elements of an excessive force claim because there is no issue of fact that, at the time of the alleged force, prison policy required plaintiff, and all inmates, to be clean-shaven, and therefore, any actions defendants took too maintain that policy were necessarily reasonable. Id. (D.E. 47).

For the reasons stated below, it is respectfully recommended that defendants' motion be granted in part, and denied in part.

**I.   Jurisdiction.**

The Court has federal question jurisdiction. 28 U.S.C. § 1331.

## II.     Procedural background.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division. ("TDCJ-CID"), and he has been confined at the McConnell Unit in Beeville, Texas, for at least the last ten years, during which time he has filed numerous lawsuits challenging events or conditions at that unit.[1] In one of those actions, plaintiff challenged the TDCJ-CID's grooming regulations under both the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") concerning his right to wear a beard and a kufi. See Garner v. Morales, Case No. 2:06cv218. Although his kufi and First Amendment claims were denied, plaintiff ultimately succeeded on his RLUIPA claim such that, effective May 19, 2011, he is entitled to wear a one-quarter inch beard as an expression of his Muslim faith. See Garner v. Livingston, 2011 WL 2038581 (S.D. Tex. May 19, 2011) (unpublished). The TDCJ-CID appealed that decision, and it remains pending before the Fifth Circuit, consolidated with another prisoner appeal. See Garner v. Morales,[2] Case No. 11-40653.

On September 30, 2011, plaintiff filed the instant lawsuit in which he raised a variety of claims, including excessive force, retaliation, and harassment, against numerous

---

[1] A summary of some of plaintiff's previous lawsuits is provided in the June 21, 2012, Memorandum and Recommendation to dismiss certain claims and retain case. (See D.E. 23 at 2-3).

[2] The named defendant changed at trial, and was then returned to Morales.

McConnell Unit officers and officials. (See D.E. 1, 7, 13, 15, 16, 17, 18-20). A Spears[3] hearing was conducted on March 22, 2012, following which, it was recommended that the Court retain plaintiff's excessive force claims against seventeen individuals arising from four separate incidents on August 6, 2009, September 30, 2010, December 7, 2010, and December 27, 2010. (D.E. 23 at 16-18, 26-27). It was recommended further that plaintiff's remaining claims be dismissed for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. § 1915(2)(2)(B) and § 1915A(b)(1).[4]

On June 22, 2012, service was ordered on the following seventeen (17) defendants:[5]

    (1)     Warden Aurelio Ambriz;
    (2)     Captain Jacquelyn Jameson;
    (3)     Officer Mauricio Rincon;
    (4)     Officer Charles Hough;
    (5)     Sergeant Billy Garza;
    (6)     Officer Conrad Perale;
    (7)     Officer Rodolpho Ruiz;
    (8)     Officer Caldwell;
    (9)     Officer Jeremy Clark;
    (10)   Officer Adam Daughtery;
    (11)   Officer [Major] Gonzales;
    (12)   Officer Luis Pulido;
    (13)   Lieutenant Jesse Perales;
    (14)   Officer Jose Almanza;
    (15)   Officer Maria Gomez;

---

[3] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

[4] Plaintiff filed objections to the recommendation. (D.E. 29). The recommendation is still pending.

[5] Both the recommendation and service order erroneously listed Officer Ruiz twice. (D.E. 23 at 26-27, D.E. 24 at 1). There is only one Officer Ruiz being sued.

    (16) Officer FNU Salinas; and
    (17) Officer Rolando De La Rosa.

(D.E. 23 at 26-27).

  On August 7, 2012, defendants 7-Rudolpho Ruiz and 9-Jeremy Clark filed their answer and raised the defense of qualified immunity. (D.E. 32). Also on that date, the following seven (7) defendants filed the instant partial motion to dismiss: 1-Warden Aurelio Ambriz; 2-Captain Jacquelyn Jameson; 3-Officer Mauricio Rincon; 5-Sergeant Billy Garza; 7-Officer Rudolpho Ruiz (as to certain claims); 15-Officer Maria Gomez; and 17-Officer Rolando De La Rosa. (D.E. 33). In addition, the Office of the Texas Attorney General ("OAG"), as *Amicus Curiae*, moved to dismiss defendants 4-Charles Hough, 13-Lieutenant Jesse Perales, and 14-Jose Almanza stating that these individuals are no longer employed by the TDCJ-CID such that the OAG has been unable to contact them to secure representation. Id. at 1, n. 1. The OAG also moved to dismiss defendant 16-Officer FNU Salinas stating that it had been unable to identify this particular defendant. Id. n. 2. Under seal, the OAG submitted the last known addresses for defendants 6-Conrad Perale, 10-Adam Daughtery, 14-Jose Almanza, 13-Lieutenant Perales, and 16-Officer Luis Pulido. (D.E. 35).

  On September 13, 2012, the Court ordered plaintiff to provide any additional information he could recall to help identify 16-Officer FNU Salinas. (D.E. 36).

  On October 8, 2012, defendants 10-Adam Daughtery, 6-Conrad Perale, and 12-Luis Pulido filed their answer and raised the defense of qualified immunity. (D.E. 43).

On October 15, 2012, service was returned unexecuted as to defendant 13-Lieutenant Jesse Perales (D.E. 44, 45), and on October 17, 2012, it was returned unexecuted as to defendant 14-Jose Almanza. (D.E. 46).

On December 3, 2012, plaintiff filed a response to the Court's identification order and stated that the rank of defendant 11-Officer Gonzales should be "Major." (D.E. 47).

Of the seventeen defendants named in this action, and identifying them by the number employed above, the following six (6) defendants remained unserved: 4-Officer Charles Hough; 6-Lieutenant Jesse Perales; 8-Officer Caldwell; 11-Major Gonzales; 14-Jose Almanza; and 16-Officer FNU Salinas. Defendants seek dismissal of Hough, Perales, Almanza, and Salinas on this basis. (D.E. 33 at 1, n. 1 & 2).

To date, plaintiff has failed to file a written response in opposition to defendant's motion seeking a partial dismissal.[6]

### III. Plaintiff's excessive force claims.

In his original complaint, plaintiff complained of the following four incidents, and charged that the named defendants used excessive force in violation of his Eighth amendment right to be free from cruel and unusual punishment.

**(1)   Claim 1.   August 6, 2009 Use of Force ("UOF").** (D.E. 1 at 4-8).

On August 6, 2009, at approximately 8:30 a.m., plaintiff was escorted along with four or five other inmates to 3-gym to have his picture taken for his ID card. The gym was

---

[6] Pursuant to Local Rule 7.4, failure to respond is taken as a representation of no opposition.

crowded with inmates sitting along the walls on the floor. Officer Rebecca Stamm and Officer James Hackman (not defendants) were present and taking roll call for count.

As plaintiff entered the gym, the classification supervisor, Amie Gaitan approached him and reprimanded him for his appearance. Ms. Gaitan told him that he would not get his ID picture taken unless he was clean-shaven, despite the fact that he had challenged the grooming policy in federal court, and the case was then pending. Ms. Gaitan ordered plaintiff to sit down and wait.

After count cleared, plaintiff began to exit the gym with other inmates. Officer Stamm and Officer Hackman stopped plaintiff stating that he could not leave because he was still "on the list.' Plaintiff responded that Ms. Gaitan had advised him that he could not have his photo taken unshaven. The officers told him not to worry, and indicated that he would get his picture taken.

Plaintiff continued to wait, and at some point, he observed Officers Hackman and Stamm, together with Ms. Gaitan, talking on the phone and pointing at him. Thereafter, Officer Hackman told plaintiff that Captain Jacquelyn Jameson was coming to talk to him, and until then, he should just "chill."

After approximately 3 hours, defendants Warden Ambriz, Captain Jameson, Sergeant Garza, Officer Rincon, and Officer Hough arrived at the gym, along with Nurse Bullock and Nurse Burns. Warden Ambriz advised plaintiff that the McConnell Unit had recently enacted a policy by which any amount of force could be employed to take the photo of a prisoner

who would not comply with the grooming policy. Then, Officer Rincon handcuffed plaintiff, and Officer Stamm started a video-camera.

Once the video started, Captain Jameson addressed the camera and gave the formalities about employing a use of force. Warden Ambriz and Captain Jameson ordered Officer Rincon and Officer Hough to place plaintiff in the barber chair. Officer Rincon and Officer Hough grabbed plaintiff and pushed him down into the chair, and remained there holding his arms down, while Officer Garza began shaving plaintiff, while instructing him to sit still. (Officer Garza is not a barber nor is he licensed to cut hair). The other officers mimicked plaintiff and laughed at him. After the shave, plaintiff's photo was taken.

Following the shave, plaintiff was taken to medical for a cursory examination. He was then escorted to 11-Building and once there, he refused to walk up the stairs, advising Captain Jameson that he has first row, bottom bunk medical restrictions. Captain Jameson threatened plaintiff with force if he did not walk up the stairs; however, plaintiff refused. Eventually, Captain Jameson placed plaintiff in the holding cage for lower row housing.

**(2) Claim 2. September 30, 2010 UOF.** (D.E. 20 at 11-15).

On September 30, 2010, plaintiff and other inmates were instructed to pack their property and take it to the rec yard for a shake down. (D.E. 20 at 11-15). Officer McGovern (not a defendant) used racial slurs against plaintiff, and so plaintiff asked Officer Conrad Perale to control Officer McGovern. In response, Officer Perale, Officer Ruiz and Officer Caldwell encircled plaintiff and threatened him with physical harm. These officers then pushed plaintiff causing harm to his neck, and also kicked and damaged his property.

**(3)     Claim 3.        December 7, 2010 UOF.**  (D.E. 20 at 16-19).

On December 7, 2010, defendants Major Gonzales and Officer Pulido began harassing plaintiff about not shaving as he was attempting to enter the chow hall. (D.E. 20 at 16-19). A use of force ensued involving Officer Clark, Officer Daugherty, Major Gonzales and Officer Pulido. Thereafter, plaintiff was denied medical attention, as well as food for three days.

**(4)     Claim 4.        December 27, 2010 UOF.**  (D.E. 20 at 19-22).

On December 27, 2010, Officer Almanza stopped plaintiff on his way to chow and stated that he needed to be clean shaven. (D.E. 20 at 19-22). Additional officers were called and they encircled plaintiff with mace and batons. Plaintiff sat down with his back to the wall and admits that he was refusing to submit to their orders to be cuffed, and he requested a supervisor with a camera. Officer Almanza told plaintiff that Lieutenant Jesse Perales had said to use force if necessary to shave him, but that they would compromise if plaintiff would just agree to shave. Plaintiff argued that he was in compliance with policy and waited for a supervisor. Finally, Lieutenant Perales and Officer Ruiz arrived and ordered plaintiff to submit to restraints. Thereafter, Officers Gomez, Salinas, and De La Rosa jerked plaintiff up to standing and then twisted his arms while Officer Ruiz placed him in cuffs. The officers told plaintiff that, if he shaved, he would be escorted to medical, and they placed him in his cell.

**IV.     Section 1983 claims and Rule 12(b)(6) dismissals.**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995). Under Rule 12(b)(6), Fed. R. Civ. P., a case will not be dismissed for failure to state a claim unless plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Cuvillier v. Taylor, 503 F.3d 397, 401 n. 4 (5th Cir. 2007). See also Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002).

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Under the demanding strictures of a Rule 12(b)(6) motion, plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Oppenheimer v. Prudential Sec., Inc., 94 F.3d 189, 194 (5th Cir.1996). Dismissal is appropriate only if the factual allegations are insufficient to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true. Bell Atl. Corp. v. Twombley, 550 U.S. 544, 555 (2007).

More recently, the Supreme Court expounded upon the Twombley standard and held that, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009). In this regard, a review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir.2004). "If, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." Hall v. Hodgkins, No. 08-40516, 2008 WL 5352000, *3 (5th Cir. 2008).

**V.     Discussion.**

    **A.     Statute of limitations.**

Plaintiff filed his original complaint on September 30, 2011. (D.E. 1). In his first excessive force claim, he challenges a UOF that occurred on August 6, 2009. Defendants move to dismiss this claim and all defendants involved in this UOF on the grounds that it is barred by limitations.

Federal civil rights actions instituted in Texas, such as those brought pursuant to 42 U.S.C. § 1983, are deemed analogous to personal injury claims, and, therefore, the applicable limitations period is the two years fixed by Tex. Civ. Prac. & Rem. Code § 16.003(a). Accrual of a § 1983 claim is governed by federal law. A cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. Gonzales v. Wyatt, 157 F.3d 1016, 1020 (5th Cir.1998).

Plaintiff had notice of his excessive force claim on the date it occurred, August 6, 2009, and he then had two years within which to file his claim in federal court, that is, by August 6, 2009. Thus, on its face, plaintiff's challenge to the August 6, 2009 UOF appears

10

barred as his complaint was filed on September 30, 2011, over two years after the incident. However, it is well established that, prior to filing suit in federal court, a prisoner must exhaust his administrative remedies. See 42 U.S.C. § 1997e(a).[7] It is equally well established that limitations is tolled while a prisoner exhaust his administrative remedies. See Clifford v. Gibbs, 298 F.3d 328, 333 (5th Cir. 2002) (holding that because the Prison Litigation Reform Act [§ 1997e(a)] requires a prisoner to exhaust his administrative remedies, the prisoner is entitled to equitable tolling of the applicable limitations period while he exhausts the remedies); Harris v. Hegmann, 198 F.3d 153, 158 (5th Cir. 1999) (holding that the statute of limitations applicable to a civil rights complaint should be tolled while a prisoner exhausts his administrative remedies).

In this case, on August 9, 2009, plaintiff filed timely a Step 1 grievance complaining about the August 6, 2009 UOF.[8] (See D.E. 7 at 3-4). It was denied by Warden Jackson on September 9, 2009. Id. at 4. On September 14, 2009, plaintiff filed his Step 2 appeal. Id. at 5-6. The Regional Grievance Office denied his Step 2 appeal on September 29, 2009. Id. at 6. It would take an additional two or three days before plaintiff would receive a copy of

---

[7] "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

[8] Prisoners are allowed fifteen calender days to file a Step 1 grievance. Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) Id. (citing TDCJ Admin. Directive No. AD-03.82 (rev. 1), Policy ¶ VI (Jan. 31, 1997)). The response to the Step 1 grievance is due within forty days after receipt of the grievance. Id. The prisoner then has ten days to submit an appeal. Id. The response to the Step 2 grievance is due within forty days after receipt of the prisoner's appeal. Id.

the Step 2 denial. Thus, allowing for plaintiff's tolling of limitations while he exhausted his administrative remedies, limitations did not begin to run until after his receipt of the denial of his Step 2 appeal. Even assuming that plaintiff received the Step 2 response on the date it was issued, September 29, 2009, he then had two years, or until September 29, 2011, to timely file his claim challenging the August 6, 2009 UOF. Although his original complaint is file stamped September 30, 2011, the envelope he mailed it in is stamped September 28, 2011. (See D.E. 1 at 33). Thus, plaintiff's original complaint would have been placed in the prison mail system on that date, or even earlier, and it is deemed filed as of that date.[9] As such, allowing for exhaustion of his administrative remedies, plaintiff's allegations concerning the August 6, 2009 UOF are timely raised within the two-year statute of limitations. Accordingly, it is respectfully recommended that defendants' motion to dismiss Claim 1 as barred by limitations be denied.

### B. Excessive force.

Defendants also move to dismiss plaintiff's Claim 1, challenging the August 6, 2009 UOF, and Claim 4, challenging the December 27, 2010 UOF, arguing that, because TDCJ-CID policy prescribed that inmates be clean-shaven, and the Court's decision in Garner v. Morales had not yet been rendered to exempt plaintiff from this policy, the force employed

---

[9]"Pro se prisoners' filings are governed by the mailbox rule. Thus, they are deemed 'filed as soon as the pleadings have been deposited into the prison mail system.'" Spotville v. Cain, 149 F.3d 374, 376 (5th Cir. 1998) (citing Houston v. Lack, 487 U.S. 266, 274-76 (1988).

by defendants to enforce the grooming standard was necessarily reasonable, and as such, cannot be excessive.

As previously discussed in the recommendation to retain plaintiff's excessive force claims (D.E. 23), to establish an excessive force claim, a prisoner-plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than *de minimis* but not necessarily significant. See Hudson v. McMillian, 503 U.S. 1, 6-7, 10, (1992) (stating that a claimant must show officials applied force maliciously and sadistically for the very purpose of causing harm); Gomez v. Chandler, 163 F.3d 921, 923-24 (5th Cir. 1999); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997). The factors to be considered are (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. Gomez, 163 F.3d at 923.

It is well established that prison officials may use physical force to restore or preserve order. Whitley v. Albers, 475 U.S. 312, 320, 326 (1986). However, the authorization to employ force is not unlimited, and the amount of force required to effect those purposes must be weighed against risk of injury to the inmate. Id.; Hudson, 503 U.S. at 10. In circumstances where a prisoner's rule violation poses no threat to the safety of prison officers

13

or others, the apparent need for force becomes more suspect and subject to scrutiny under Hudson.[10]

In this case, plaintiff claims that, during the August 6, 2009 UOF, he was physically held down while "clipper shaved" by an officer who is not a licensed barber, and on December 27, 2010, he was physically restrained and shackled as a consequence of his refusing to shave. On each of these occasions, there was no melee or event involving other prisoners or circumstances that necessitated force to restore order to the prison. Indeed, plaintiff was essentially singled-out and his refusal to shave became the event to justify the use of force. What is even more troubling about plaintiff's accusations is that an alternative to the force was clearly available: officials could have simply given plaintiff a disciplinary case, as they had done repeatedly on prior occasions, rather than risk harm to themselves or to plaintiff with a use of force.

As mandated by Rule 12(b)(6), taking plaintiff's allegations as true, plaintiff has stated a claim of excessive force against the individuals who specifically ordered the use of force on August 6, 2009, Warden Ambriz and Captain Jameson. In addition, Officer Rincon and Officer Hough, who held plaintiff in the chair, and Sergeant Garza, who shaved plaintiff, should be required to answer plaintiff's allegations against them.

---

[10] The Fifth Circuit has held that physical violence against a detainee who poses no threat to the safety of the officers or others is a constitutional violation. See Ware v. Reed, 709 F.2d 345 351 (5th Cir. 1983).

As to the December 27, 2010 use of force, plaintiff alleges that he was stopped on his way to chow by Officer Almanza who told him that he needed to be clean shaven before he could eat. (D.E. 20 at 19-22). Plaintiff refused, additional officers arrived, and Lieutenant Perales ordered a UOF to place plaintiff in restraints. According to plaintiff, Officer Gomez, Officer Salinas, and Officer De La Rosa jerked him up to stand, and then twisted his arms while Officer Ruiz placed the cuffs on. He claims that defendants then offered that they would take him to medical, if he would shave first, suggesting that he had been injured. Again, assuming the facts in the light most favorable to plaintiff, he has sufficiently stated a claim of excessive force against Officer Almanza, Lieutenant Perales, and Officers Ruiz, Gomez, Salinas, and De La Rosa. It is respectfully recommended that the Court deny defendants' motion to dismiss plaintiff's UOF claim from December 27, 2010 (Claim 4).

### C.     Inability to serve certain defendants.

Finally, defendants move to dismiss plaintiff's claims against 4-Officer Charles Hough, 13-Lieutenant Jesse Perales, 14-Officer Jose Almanza; and 16-Officer FNU Salinas. (D.E. 33 at 1, n. 1 & 2). As to Hough, Perales and Almanza, the OAG represents that these individuals are no longer employed by the TDCJ-CID. Id. n. 1. As previously noted, the OAG submitted under seal the last known addresses of Perales and Almanza, (D.E. 31), and service was again attempted on these individuals, but returned unexecuted. (D.E. 44-46).

As to Officer Salinas, the OAG reported that it could not identify this employee. Plaintiff was asked to provide additional information, but in response, he addressed only the

rank of Major Gonzales and provided no additional details about the officer identified as FNU Salinas. (See D.E. 47).

Although an inmate is entitled to rely upon service by the United States Marshal, "a plaintiff may not remain silent and do nothing to effectuate such service. At a minimum, a plaintiff should attempt to remedy any apparent service defects of which a plaintiff has knowledge." Rochon v. Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987). Further, Rule 4(m) of the Federal Rules of Civil Procedure provides:

> If a defendant is not served within 120 days after the complaint is filed, the court– on motion or on its own after notice to the plaintiff– must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

In not filing a response to the motion to dismiss, and in not providing any additional detail as defendant Salinas, plaintiff has failed to demonstrate good cause. Thus, for purposes of efficient case management, it is respectfully recommended that the Court dismiss without prejudice plaintiff's excessive force claims against Officer Salinas, as well as against the two former employees on whom service was returned unexecuted, Officer Jose Almanza and Lieutenant Jesse Perales.

As to Officer Charles Hough, the OAG has not provided his last known address, and it is respectfully recommended that it be ordered to do so.

Finally, although not raised in defendants' motion for partial dismissal, to date neither Officer Caldwell nor Major Gonzales have filed an answer to plaintiff's complaint, and there is no indication that these defendants are no longer employed by the TDCJ-CID. Thus, it is respectfully recommended that the OAG obtain approval to represent these defendants or file under seal their last known addresses.

## VI. Recommendation.

For the reasons stated above, it is respectfully recommended that the Court deny defendants' motion to dismiss (D.E. 33) for failure to state a claim or as barred by limitations. It is respectfully recommended further that the Court dismiss without prejudice plaintiff's claims against defendants Lieutenant Jesse Perales, Officer Jose Almanza, and Officer FNU Salinas pursuant to Fed. R. Civ. P. 4(m). Finally, it is respectfully recommended that the OAG submit under seal the last known address of Charles Hough, and obtain authority to represent, or provide relevant information as to the whereabouts of defendants Officer Caldwell and Major Gonzales for purposes of serving these defendants.

Respectfully submitted this 23rd day of January, 2013.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).