UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| WILLI FREE I GARNER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:11-CV-00320 |
| | § | |
| ERNEST GUTIERREZ, JR, *et al*, | § | |
| | § | |
| Defendants. | § | |

**ORDER ADOPTING, AS SUPPLEMENTED AND MODIFIED,
THE MEMORANDUM AND RECOMMENDATION
TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE**

Pending before the Court is United States Magistrate Judge B. Janice Ellington's June 21, 2012 Memorandum and Recommendation (D.E. 23), resulting from her initial screening of the Plaintiff's action pursuant to the Prison Litigation Reform Act. Magistrate Judge Ellington recommended that the Court retain certain excessive force claims against certain Defendants and dismiss the remaining claims and Defendants. Plaintiff timely filed his Objections (D.E. 29), which are set out and discussed below.

In 2009, the Fifth Circuit relied on substantial precedent in denying Plaintiff's claim to a constitutional right to wear a beard while in prison in observance of his Muslim faith. *Garner v. Morales*, No. No. 07-41015, 2009 WL 577755 (5th Cir. March 6, 2009). However his case was remanded for a determination of whether Plaintiff has a statutory right to wear a beard while in prison under the Religious Land Use and Institutionalized Persons Act (RLUIPA or Act), 42 U.S.C. §§ 2000cc-2000cc-5. On remand, the District Court held that Plaintiff does have the right to maintain his beard.

*Garner v. Livingston*, No. 06-cv-218, 2011 WL 2038581 (S.D.Tex. May 19, 2011).  That decision is currently on appeal at the Fifth Circuit.

This case does not address the Plaintiff's alleged right to wear a beard during his incarceration.  Instead, he complains of numerous instances (prior to the District Court's recent ruling) of alleged excessive force in trying to enforce the prison grooming policy and retaliation for Plaintiff's related complaints against prison personnel.

## EXCESSIVE FORCE CLAIMS

First, Plaintiff objects to the recommended dismissal of Defendants Trevino, Robles, Garcia, Mayfield, and John Doe and his claim arising from an early morning March 16, 2010 incident.  Plaintiff alleges that Trevino accosted him while he was sleeping—lying in his bunk with no disturbance or defiance—then allegedly entered Plaintiff's cell and assaulted him by punching him in the ribs and thigh, causing severe pain that lasted several days.  D.E. 16, pp. 5-7.  Plaintiff avers that Defendant Robles also entered the cell to watch and that Trevino proceeded to trash Plaintiff's cell.  *Id*. Defendants Garcia, Mayfield, and John Doe were also in attendance and stood by and watched while Trevino allegedly assaulted Plaintiff and destroyed his personal property.

Plaintiff complains that the Magistrate Judge did not adress this incident, which he characterizes as an application of force that was not applied in a good faith effort to maintain or restore discipline, but was malicious and sadistic with the intent only to cause harm.  In support of his objection, Plaintiff cites *Hudson v. McMillian*, 503 U.S. 1, 6-7, 10 (1992); *Gomez v. Chandler*, 163 F.3d 921, 923-24 (5th Cir. 1999); and *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).  Reading his Complaint indulgently and

accepting his allegations as true at this stage of the proceedings pursuant to *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*) and *Denton v. Hernandez*, 504 U.S. 25, 33 (1992), the Court **SUSTAINS** Plaintiff's first objection.

Second, Plaintiff objects to the recommended dismissal of Defendants Hackman, Stamm, and Gaitan.  He alleges that Gaitan (a classification officer) told Hackman and Stamm to make sure Plaintiff did not leave while she made a telephone call regarding enforcement of the grooming policy prior to having Plaintiff's picture taken for his identification card.  Stamm then videotaped the forcible shaving event while Hackman and Gaitan stood in the background.  The event took 20 minutes, which Plaintiff argues was sufficient time for any of the three Defendants to intervene and stop it.

Plaintiff argues that, while they did not actively hold him down and shave him, they had a duty to stop the others.  *E.g.*, *Buckner v. Hollins*, 983 F.2d 119, 121-22 (8th Cir. 1993) (duty to stop the beating of naked and handcuffed prisoner); *Bolin v. Black*, 875 F.2d 1343, 1347-48 (8th Cir. 1989) (finding liability where, after prison riot, prisoners were taken to laundry for beatings with supervisor instructing only that he did not want anyone killed), *cert. denied*, 493 U.S. 993, 110 S.Ct. 542 (1990); *Simpson v. Hines*, 903 F.2d 400, 403 (5th Cir. 1990) (duty to stop officers who squeezed the inmate's neck and sat on his chest causing death by asphyxiation after inmate screamed and begged for mercy).

According to Plaintiff's allegations, the officers who shaved him purported to act only to enforce prison policy.  They were not engaged in gratuitous violence and did not appear to act for the sole purpose of inflicting harm.  Thus this case is akin to *Rascon v.*

*Hardiman*, 803 F.2d 269, 276-77 (7th Cir. 1986). That opinion, which Plaintiff cited, holds that a plaintiff cannot succeed on allegations against bystanders that rise only to the level of negligence in failing to perceive that the other officers were crossing the line from legitimate enforcement efforts to unlawful, excessive force. Plaintiff's second objection is **OVERRULED**.

### RETALIATION CLAIMS

Third, Plaintiff objects to the recommended dismissal of his retaliation claims in that the Defendants engaged in an ongoing pattern of retaliatory harassment over a prolonged period of time. The Magistrate Judge concluded that the Plaintiff had not alleged a viable claim because Plaintiff could not distinguish between conduct that was intended to gain compliance with the grooming policy and conduct that was motivated only by retaliation. In other words, he admitted that it was his own refusal to shave and comply with the grooming policy that led to the consequences of which he complains. D.E. 23, pp. 20-21. Plaintiff has failed to supply this Court with any argument or authorities that militate against this conclusion. Plaintiff's third objection is **OVERRULED**.

Fourth, Plaintiff objects to the recommended dismissal of his retaliation claims as they specifically relate to the deprivation of food. He objects to the characterization of the denial of meals as "*de minimis*." He further alleges that a punishment that deprives him of sustenance triggers significant due process rights that were not afforded to him.

It is true that the amount of due process owed is commensurate with the severity of the punishment inflicted. Plaintiff cited *Hewitt v. Helms*, 459 U.S. 460, 473-76, 103

S.Ct. 864, 872-74 (1983) for this proposition.  However, it is also true that "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).

More recently, the Supreme Court has built upon the *Hewitt* holding and instructs that the new inquiry regarding claims for due process arising out of conditions of confinement is whether the deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2300 (1995).  Plaintiff argues that deprivation of food is a form of corporal punishment, which requires a hearing before it is imposed.  For that proposition, he relies on *Cooper v. Sheriff, Lubbock County, Texas*, 929 F.2d 1078 (5th Cir. 1991) (*per curiam*) and *Solomon v. Zant*, 888 F.2d 1579, 1582 (11th Cir. 1989).

The *Solomon* court, like many others including the Fifth Circuit, concluded that a regulation that restricts a prisoner from wearing a beard is a reasonable exercise of authority to ensure the safety of prisoners and their guards.  *See Green v. Polunsky*, 229 F.3d 486 (5th Cir. 2000).  In *Solomon*, the Eleventh Circuit upheld the enforcement of the grooming restriction even when it restricted the prisoner to his cell, thus preventing him from meeting with his lawyer.

In *Talib v. Gilley*, 138 F.3d 211 (5th Cir. 1998), the Fifth Circuit held that no "cruel and unusual" punishment or due process concerns were raised when a prisoner's own refusal to comply with a reasonable restriction results in the denial of food.  In that case,

5 / 8

the prisoner was required to face the opposite wall and kneel with his hands behind his back in order to receive his food tray.  When the prisoner failed to comply, he did not get his food.  More specifically, the *Talib* court found no constitutional violation even though the prisoner allegedly lost 15 pounds and missed about fifty meals over a five-month period.  "Given the ease with which Talib could have complied with reasonable prison regulations, he in a very real sense 'carried the keys' to the kitchen cupboard.  He chose not to unlock it, and it is not for the federal courts to intervene in his personal decision." *Talib, supra* at 215-16 (citation omitted).

The *Talib* opinion specifically distinguishes the *Cooper* opinion on which the Plaintiff relies.  *Talib, supra* at 214 n.3.  In *Cooper*, the prisoner was continuously deprived of food for twelve consecutive days and it was not clear how the restriction—a requirement to be fully dressed before having access to food—was reasonably applied to result in that much deprivation.  When the allegations do not rise to the denial of "a minimal measure of life's necessities," a constitutional claim does not arise.  *Id*.  Where the restriction has already been held to be reasonable, *Cooper* has no application and the prisoner "holds the keys to the cupboard."  *Talib, supra* at 215 n.4.

Plaintiff's suggestion that, to this day, he does not know what rule he violated is patently specious.  D.E. 29, p. 14.  His argument that an unconstitutional regulation does not insulate guards who enforce it, citing *Gates v. Collier*, 501 F.2d 1291, 1304-06 (5th Cir. 1974) (discussing clearly prohibited brutality), is inapplicable, as the grooming regulation at issue has been held to pass constitutional muster.  Plaintiff's fourth objection is **OVERRULED**.

6 / 8

Having reviewed the findings of fact, conclusions of law, and recommendations set forth in the Magistrate Judge's Memorandum and Recommendation, as well as Plaintiff's Objections, and all other relevant documents in the record, and having made a *de novo* disposition of the portions of the Magistrate Judge's Memorandum and Recommendation to which objections were specifically directed, the Court **SUSTAINS** the Plaintiff's first objection and **OVERRULES** Plaintiff's remaining objections and **ADOPTS** as its own the findings and conclusions of the Magistrate Judge as supplemented and modified herein.   Accordingly, the Court **RETAINS** the Plaintiff's excessive force claims against the following Defendants:

(1)    Warden Aurelio Ambriz;
(2)    Captain Jacquelyn Jameson;
(3)    Officer Mauricio Rincon;
(4)    Officer Charles Hough;
(5)    Sergeant Billy Garza;
(6)    Officer Conrad Perale;
(7)    Officer Rodolpho Ruiz;
(8)    Officer Caldwell;
(9)    Officer Jeremy Clark;
(10)   Officer Adam Daughtery;
(11)   Officer Adam Gonzales;
(12)   Officer Luis Pulido;
(13)   Lieutenant Jesse Perales;
(14)   Officer Jose Almanza;
(15)   Officer Maria Gomez;
(16)   Officer Salinas;
(17)   Officer Rolando DelaRosa;
(18)   Sergeant Elias Trevino, Jr.;
(19)   Officer Robles;
(20)   Officer Garcia;
(21)   Officer William Mayfield; and
(22)   John Doe 1.

The Court **DISMISSES** the Plaintiff's remaining claims against the remaining Defendants for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

ORDERED this 27th day of February, 2013.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE